# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE

IN THE MATTER OF J.C., A Minor Student,   )
By and Through His Parent, J.C. and   )
J.C.,   )
  )
     *Plaintiffs.*   )
  )
vs.   )
  )    **No. 3:16-cv-00609**
METROPOLITAN GOVERNMENT   )
OF NASHVILLE,   )
And   )
TENNESSEE DEPARTMENT OF   )
EDUCATION   )
  )
*Defendants.*

## MEMORANDUM IN SUPPORT OF TENNESSEE DEPARTMENT OF EDUCATION'S MOTION FOR DISMISSAL

### FACTUAL ALLEGATIONS

Plaintiff J.C. is a minor child with autism who was a student within the Metro Nashville Public Schools system operated by Defendant Metropolitan Government of Nashville (MGN). [Docket No. 1, ¶ ¶ 1, 9, 11]. MGN is a local education agency (LEA) that maintains and operates the public school system in Davidson County. [Docket No. 1, ¶ ¶ 4, 7; 20 U.S.C. § 1401(19)[1]; Tenn. Code Ann. § 49-2-203(a)(2)]. Defendant Tennessee Department of Education (TDOE) is

---

[1] It provides in relevant part that an LEA is "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State." Plaintiffs mistakenly conflate this definition with that of an SEA in their Complaint and incorrectly cite a statute that is inapplicable. [Docket No. 1, ¶ 2].

1

the state educational agency (SEA) that is in charge of implementing educational laws and policies within the State. Tenn. Code Ann. § § 49-1-201.

J.C. is disabled within the meaning of the Rehab Act and the ADA. [Docket No. 1, ¶ 10]. Plaintiffs allege that J.C. was bitten and bruised by an older person while attending school as a result of a lack of appropriate supervision. [Docket No. 1, ¶ 12]. Plaintiffs were not satisfied with MGN's responses to inquiries about the bites and attached a recording device to J.C. over the course of three days. [Docket No. 1, ¶ 13-14]. The recordings captured unequal treatment towards J.C. in the form of a MGN employee's abusive and inappropriate comments towards J.C., her ignoring J.C., her dereliction of duties, and her slamming J.C.'s head into the desk. [Docket No. 1, ¶ 15]. Another MGN employee improperly restrained J.C. with the use of a martial arts "pressure point" technique and improperly isolated J.C. [Docket No. 1, ¶ 16].

As a result of these actions by MGN, Plaintiffs now allege that TDOE has intentionally discriminated against J.C.. [Docket No. 1, ¶ 41].

### STANDARD OF REVIEW

In reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509,511-12 (6th Cir. 2001). "The Supreme Court has recently clarified the pleading standard necessary to survive a Rule 12(b)(6) motion." *CGH Transport Inc. v. Quebecor World, Inc.*, 261 Fed.Appx. 817, 819-20 (6th Cir. 2008) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Factual allegations contained in a complaint must "raise a right to relief

2

above the speculative level." *Twombly*, 550 U.S. at 555.

*Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the' grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citations omitted). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* n. 3.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 US. 662, 678 129 S.Ct. 1937 (2009) (*citing Twombly*, 550 US. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not' show[n] '- 'that the pleader is entitled to relief. '" *Id.* at 679 (*citing* Fed. R. Civ. P. 8(a)). *Iqbal* further reaffirmed that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (*citing Twombly*, 550 US. at 555).

Furthermore, Plaintiffs, as the parties invoking federal subject matter jurisdiction, bear the burden of persuading the court that subject matter jurisdiction exists in the case. *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005). A facial attack on subject matter

3

jurisdiction pursuant to Rule 12(b)(1) challenges the sufficiency of the pleading, and in reviewing such an attack, the court takes the allegations in the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**ARGUMENT**

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE REHAB ACT AND ADA AGAINST TDOE.

Plaintiffs seek to impose liability on TDOE for the alleged conduct and/or misconduct of MGN. Specifically, they allege that TDOE is responsible for the alleged discrimination J.C. suffered while in attendance at a MGN elementary school at the hands of MGN employees. They base this liability on their allegations that "TDOE has an overarching supervisory obligation to monitor and oversee Metro Nashville non-discrimination against students with disabilities including appropriate compliance with the Tennessee Special Education and Behavioral Support Act (TSEBSA)[2] for purposes of ensuring equal treatment." [Docket No. 1, ¶ 24]. The Complaint goes on to set forth the responsibilities of not only TDOE but also the Governor, the State Board of Education (SBOE), the Advisory Council[3] for the education of students with disabilities, and other individuals under TSEBSA related to the collection and reporting of data on the use of isolation and restraint in Tennessee. [Docket No. 1, ¶ ¶ 27-24]. These responsibilities include the Advisory Committee's obligation to use the reported data to make recommendations to the *SBOE*, and not TDOE, to reduce the use of isolation and restraint in public education programs on an annual basis. Tenn. Code Ann. § 49-10-1306(e).

---

2 This act is codified in Tenn. Code Ann. § § 49-10-1301 to 49-10-1307.
3 The Advisory Council that is comprised of a maximum of 25 members, the majority of which are individuals with disabilities or parents of children with disabilities. *See* Tenn. Code Ann. § 49-10-105(b).

4

Plaintiffs further allege that all of the entities listed above have failed their duties in that either the Advisory Council has not provided these recommendations or *TDOE* has not accepted them. [Docket No. 1, ¶ 35]. This failure, according to Plaintiffs, constitutes TDOE's deliberate indifference to J.C.'s allegedly unequal treatment by MGN and its employees such that TDOE has intentionally discriminated against him in in violation of the Rehab Act and ADA. This theory suffers from a number of problems, however.

       **A.**       **TDOE is not liable for the actions of MGN.**

The public education system of Tennessee is set forth in Title 49 of the Tennessee Code Annotated. It is structured such that various educational entities have separate and distinct roles in the operation of a public school system. Tennessee Code Annotated § 49-1-201 sets forth the scope of TDOE's responsibilities within the public education system of Tennessee. A review of that statute establishes that TDOE, through the Commissioner of Education, is responsible for implementing the laws and policies adopted by the General Assembly and the State Board of Education. Although other, related duties are also set forth in the statute, none of them include the management, control, or operation of any school in Tennessee. Rather, management and control of all public schools are specifically and exclusively left to the local boards of education across the State. Tenn. Code Ann. § 49-2-203(a)(2). Other statutes bear this out. *See* Tenn. Code Ann. § 49-6-302(a) (requiring each local school district to establish and maintain "as many elementary schools as necessary for the instruction of all children" in the district); Tenn. Code Ann. § 49-6-402 (authorizing local boards of education to "establish and maintain" junior and senior high schools).

5

Thus, TDOE has absolutely no control over the management or operation of any MGN school, including the school J.C. attended. It also lacks any control or authority over the individuals who allegedly discriminated against and abused J.C. Any discriminatory or tortious conduct that J.C. has been subjected to has been done by MGN employees and is the responsibility of MGN. TDOE is not responsible. It did not engage in any conduct that is discriminatory towards J.C. There is no allegation that TDOE had any knowledge of the alleged discrimination. But even if there were such allegations, Plaintiffs do not allege that TDOE had the authority to take any corrective action. Put simply, Plaintiffs seek to impose liability on TDOE for alleged conduct that it had no knowledge of or power to correct, committed in a school it does not operate, by individuals it did not employ.

### B.     TDOE was not deliberately indifferent.

Despite the foregoing, Plaintiffs seek to hold TDOE liable under a theory that it has failed its duties under TSEBSA and is not taking "sufficient preventive or deterrent action" to the "foreseeable harms" J.C. has been subjected to by MGN employees. [Docket No. 1, ¶ ¶ 38, 41]. Plaintiffs, however, cannot cite any authority to support this theory. There is no statute making TDOE responsible for the actions of a separate, distinct entity, nor has TDOE discovered any cases holding an SEA liable for non-educational injuries of a child resulting from the alleged conduct of a employees of an LEA.

Plaintiffs must establish that TDOE was deliberately indifferent to the discrimination, but as noted above, there is no allegation that TDOE even had any knowledge of the alleged discriminatory conduct. *See Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 (6th Cir. 2008) (Intent to discriminate can also be inferred from TDOE's "deliberate indifference.").

Nevertheless, Plaintiffs seek to establish TDOE's deliberate indifference in two ways: (1) TDOE has failed to comply with the requirements of TSEBSA; and (2) TDOE is not taking sufficient preventive action based on the number of reported restraints. Both of these allegations fail, as a matter of law, to establish TDOE's deliberate indifference.

1. *Plaintiffs Cannot Sue the State in Federal Court for a Violation of State Law.*

Plaintiffs allege that TDOE has failed in its duties that are set forth in TSEBSA with respect to reducing restraints and ensuring consistency among Tennessee school districts. [Docket No. 1, ¶ 35]. The foreseeable result of TDOE's failure, according the Plaintiffs, was J.C.'s discrimination in the form of improper isolation and restraint. In making this allegation, Plaintiffs are essentially attempting to sue TDOE in federal court for an alleged violation of a state law. This Court does not have jurisdiction to consider such a claim, however, because TDOE is an arm of the State of Tennessee and enjoys sovereign immunity from such claims. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 911, 79 L. Ed. 2d 67 (1984) (the States' constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature). Therefore, Plaintiffs cannot base a suit against the State on the violation of a state law. Even if TDOE were not immune, nothing in TSEBSA authorizes a private right of action for the failure of any of the named entities in the statute to comply with one of its obligations.

2. *TDOE Has Complied with TSEBSA.*

Notwithstanding all of the foregoing, TDOE has fulfilled its obligations under TSEBSA.. The only requirement the act directly places on TDOE is to compile data it receives from local education agencies on their use of isolation and restraint, annually report it to the Advisory

7

Council, and make it available to the public. Tenn. Code Ann. § 49-10-1306(e). It does not create an "overarching supervisory obligation to monitor and oversee Metro-Nashville non-discrimination against students with disabilities" as Plaintiffs allege. [Docket No. 1, ¶ 24]. To the extent that the statute creates obligations for *any* entities to engage in substantive action with respect to isolation and restraints, it places such obligations on LEA's, the Advisory Council, and the SBOE. *See* Tenn. Code Ann. § 49-10-1306(c) ("The local education agency shall use the information obtained from records of isolation and restraint in developing its behavior intervention training program."); Tenn. Code Ann. § 49-10-1306(e) (requiring the Advisory Council to use the information it receives from TDOE to report to the SBOE with recommendations to reduce the use of isolation and restraint and then making it the SBOE's responsibility to "establish policy or strategies or both to reduce or eliminate the use of isolation and restraint in schools."). There is no allegation that TDOE has failed to report the data to the Advisory Council. Thus, Plaintiffs' allegations are insufficient to establish TDOE intentionally discriminated against J.C.

    3.     *TDOE Has Neither the Duty nor the Authority to Act.*

Plaintiff's also seek to attach liability to TDOE with allegations that it has not taken "sufficient preventive or deterrent action" in light of the restraint statistics in MGN. [Docket No. 1, ¶ 38]. They rely on the higher proportion of reported isolations and restraints in MGN compared to those in Shelby County. [Docket No. 1, ¶ 37]. This bare fact cannot support an allegation of TDOE's deliberate indifference. It is premised on the assumption that the mere fact of a higher proportion of reported incidents in MGN *as compared to one, single other LEA* must signify to TDOE that MGN is improperly restraining or isolating students such that it was required to take corrective action. While the Court is required to assume all facts as true for the purpose of this

8

motion, it should not make assumptions that are not facially plausible. It is simply too great of an analytical gap to say that the comparatively higher proportion of restraints and isolations in MGN creates some kind of duty or obligation on TDOE to take corrective action.

Moreover, there is no authority for TDOE to take any preventive or deterrent action even if the mere existence of a higher percentage of reported incidents in one LEA as compared to another established the former was improperly restraining or isolating students. Nothing in TSEBSA gives TDOE this authority, nor can such authority be found in any other statute. Rather, it is specifically the duty of each LEA to develop a "behavior intervention training program."[4] Tenn. Code Ann. § 49-10-1306(c). Thus, it is the responsibility of the LEAs, who have equal access to the data, to insure the proper use of restraint and isolation. It is not TDOE's.

Finally, Plaintiffs allegations are insufficient to state a claim of the systemic inattentiveness and failings of TDOE with respect to "illegal restraints." [Docket No. 1, ¶¶ 5, 8]. As noted above, their Complaint only establishes that MGN has a higher percentage of restraints and isolations than one other LEA. This is insufficient to establish some systemic problem across the State. At best for Plaintiffs, it establishes that out of approximately 144 LEAs, there is problem in only one – MGN. Even if TDOE had the authority to take action if there were a problem in MGN, Plaintiffs allegations do not support a claim of systemic violations.

### CONCLUSION

Accordingly, Plaintiffs fail to state a claim for discrimination against TDOE under the ADA or Rehab Act. These claims should be dismissed.

---

4 This term is defined to mean "a training program in positive behavioral supports, crisis intervention and the safe use of restraint and isolation." Tenn. Code Ann. § 49-10-1303(1).

9

Respectfully submitted,


HERBERT H. SLATERY III
Attorney General and Reporter


s/Michael Markham
Michael Markham, BPR No. 22907
Civil Litigation and State Services Division
Senior Counsel
P. O. Box 20207
Nashville, TN  37202-0207
(615) 741-1730

10

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

Justin S. Gilbert
100 W. Martin Luther King Blvd, Suite 504
Chattanooga, TN 37402
Telephone: 423-499-3044
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com

Jessica F. Salonus
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jsalonus@gilbertfirm.com

Keli J. Oliver
Melissa S. Roberge
Metropolitan Legal Department
P O Box 196300
Nashville, TN 37219
(615) 862-6341
Fax: (615) 862-6352
keli.oliver@nashville.gov
melissa.roberge@nashville.gov

*s*/Michael Markham